**Opinion filed September 23, 2021**



# In The

# Eleventh Court of Appeals

_____

## No. 11-19-00351-CV

_____

## JOEL A. MCENDREE, Appellant

## V.

## JORDYN G. VOLKE, Appellee

**On Appeal from the 441st District Court**

**Midland County, Texas**

**Trial Court Cause No. CV53262**

## O P I N I O N

This appeal arises from a dispute between Joel A. McEndree, Appellant, and Jordyn G. Volke, Appellee, regarding the management of the Jordyn G. Volke Trust (the Trust), of which Appellant was the trustee and Appellee was the beneficiary. Appellee sued Appellant for breach of fiduciary duty on various grounds. Appellee moved for summary judgment, relying in part on deemed admissions that resulted

from Appellant's failure to respond to Appellee's requests for admissions. *See* TEX. R. CIV. P. 198.2(c). The trial court granted Appellee's motion. In two issues, Appellant contends that the trial court erred (1) when it granted Appellee's motion for summary judgment in reliance on the deemed admissions and (2) when it denied Appellant's motion for new trial. For the reasons discussed below, we conclude that Appellee failed to carry her summary judgment burden. Therefore, we reverse and remand.

## I. *Factual and Procedural Background*

Appellee's mother passed away in 1997 when Appellee was a minor. The Social Security Administration thereafter began issuing annual survivorship benefit checks to Appellee. Appellee's father, John Volke, executed a trust agreement with Appellant—his father-in-law at the time—whereby Appellant was the trustee and Appellee was to be the trust beneficiary for life. In this case, Appellee asserts that she did not become aware of the Trust's existence until 2016 because Appellant had never provided her with any distributions from the Trust, or any annual accountings.

In early 2017, Appellee filed suit against Appellant to compel an accounting of the Trust; she later amended her petition to assert claims for breach of fiduciary duty and the removal of Appellant as trustee. Appellee subsequently served Appellant with written discovery requests on August 31, 2017, which included requests for admissions. Appellant did not respond to any of the served discovery requests. On December 11, 2017, trial counsel for Appellant filed a motion to withdraw as counsel for Appellant, claiming that he was unable to effectively communicate with Appellant. The trial court granted the motion.

On May 21, 2018, Appellee filed a motion to remove Appellant as trustee and a motion to confirm the sufficiency of service. Appellant did not file a response to

either motion; therefore, the trial court granted the motions. As a result, Appellant was removed as trustee and service was deemed to be sufficient when it was sent to Appellant's home address by certified and regular mail. The trial court also signed an order granting Appellee's motion to compel discovery responses and, among other things, ordered that each of Appellee's requests for admissions were deemed admitted. At some point, although the record does not clearly indicate when, Appellant produced limited discovery to Appellee, including a financial statement which showed that two distributions totaling $9,390 were made from the Trust, in 2004 and 2005, respectively.

On April 24, 2019, Appellee sent a second set of requests for admissions to Appellant's home address by certified and regular mail. These requests for admissions specifically addressed, *inter alia*, (1) Appellant's alleged breaches of his fiduciary duties, including his alleged failure to deposit the annual survivorship benefit checks into the Trust; (2) whether a $7,000 withdrawal from the Trust was made for Appellant's personal use; and (3) the propriety of the $9,390 in Trust distributions as referred to in Appellant's limited discovery responses. The deadline to respond to the second set of requests for admissions was May 24, 2019. As before, Appellant did not respond, and the requests were deemed admitted as a matter of law.

On July 11, 2019, Appellee filed a traditional motion for summary judgment on her breach of fiduciary duty claim, which was based in part on the deemed admissions. On August 7, 2019, Appellant, now acting pro se, filed an unsworn letter as his response to Appellee's motion for summary judgment. In his letter response, Appellant asserted that he had no knowledge of the issuance of any Social Security checks or funds, that he had never received any such checks, and that he

had properly administered the Trust in his capacity as trustee. Appellant also asserted that he had been gravely ill for two years and had undergone multiple organ transplants. He further denied mishandling any Trust assets. Appellant submitted no attachments in support of his letter response. After considering the filings, the trial court granted Appellee's motion for summary judgment on August 16, 2019.[1]

Appellant thereafter retained new trial counsel, and a motion for new trial was filed on September 13, 2019. In the motion, in addition to challenging other summary judgment evidence, Appellant, for the first time, claimed that several of the deemed admissions were improper. Appellant asserted that, because Appellee had relied on the deemed admissions to support her motion, Appellee had failed to carry her summary judgment burden. In the alternative, Appellant requested that he be permitted to withdraw the deemed admissions. On October 3, 2019, Appellant filed a supplement to the motion for new trial that included two unsworn declarations that Appellant characterized as newly discovered evidence. Appellee filed a response in opposition to the motion for new trial and a motion to strike the supplement as being untimely. On October 15, 2019, the trial court granted Appellee's motion to strike and denied Appellant's motion for new trial. This appeal followed.

## II. *Standard of Review – Summary Judgment*

We review a trial court's ruling on a motion for summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). If a traditional summary judgment motion is filed, the movant has the burden to show that no genuine issue of material fact exists and that the trial court should grant judgment in

---

[1] The record indicates that a hearing on the motion was set for the same day, but no record of a hearing is before us.

the movant's favor as a matter of law. TEX. R. CIV. P. 166a(a), (c); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003). If the movant meets her summary judgment burden, the burden shifts to the nonmovant, who bears the burden to raise a genuine issue of material fact that would preclude the grant of summary judgment. *Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 510–11 (Tex. 2014). However, if the movant does not satisfy her initial burden, the burden does not shift and the nonmovant need not respond or present any evidence. *Id.* (citing *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678–79 (Tex. 1979)). This is because summary judgments must stand or fall on their own merits, and the nonmovant's failure to answer or respond cannot supply by default the summary judgment proof necessary to establish the movant's right to judgment. *Id.* (citing *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 343 (Tex. 1993)).

To determine if a fact issue exists, we review the evidence in the light most favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *KMS Retail Rowlett, LP v. City of Rowlett*, 593 S.W.3d 175, 181 (Tex. 2019); *Knott*, 128 S.W.3d at 215. We credit evidence favorable to the nonmovant if reasonable jurors could do so, and we disregard contrary evidence unless reasonable jurors could not. *Samson Expl., LLC v. T.S. Reed Props., Inc.*, 521 S.W.3d 766, 774 (Tex. 2017); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). The evidence raises a genuine issue of material fact if reasonable and fair-minded jurors could differ in their conclusions in light of all the summary judgment evidence presented. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007).

As relevant to this appeal, to prove a claim for the breach of a fiduciary duty, the plaintiff must establish: (1) the existence of a fiduciary duty, (2) a breach of the duty, (3) causation, and (4) damages resulting from the breach. *ETC Tex. Pipeline, Ltd. v. Addison Expl. & Dev., LLC*, 582 S.W.3d 823, 840 (Tex. App.—Eastland 2019, pet. denied) (citing *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017)).

### III. *Analysis – Summary Judgment Order and Evidence*

In support of his general contention of error, Appellant presents the following six sub-issues: (1) the record contains no evidence that overcomes the Trust agreement's limitation of trustee liability; (2) the record contains no evidence that Appellant failed to deposit the Social Security benefits checks into the Trust; (3) the deemed admissions were so improper that neither answers nor objections were required to be filed; (4) alternatively, the trial court should have permitted Appellant to withdraw the deemed admissions; (5) the trial court should have considered newly discovered evidence; and (6) fairness and justice demand that Appellant have his day in court.

### A. *Trustee Liability Under the Trust*

In his first sub-issue, Appellant complains that the record contains no probative evidence that overcomes the Trust's limitation of trustee liability. The Trust agreement provides that the trustee may only be liable for an action or default that results from the trustee's gross negligence or willful commission of an act in breach of trust. As part of this argument, Appellant further asserts that the trial court's summary judgment order is invalid.

The order granting summary judgment that was signed by the trial court recites two findings: (1) that Appellant is liable to Appellee for breach of fiduciary

6

duty and (2) that Appellant was "grossly negligent and/or acted with reckless indifference or bad faith" toward Appellee. Appellant contends that the trial court's finding of gross negligence is erroneous because breach of fiduciary duty is an intentional tort, rather than a tort based on a negligence theory. Further, Appellant asserts that the "and/or" language included in the trial court's second finding creates a fatal ambiguity because it allows for the possibility that Appellant's alleged gross negligence was the sole rationale for the trial court's grant of summary judgment. Finally, Appellant generally contends that, even if the summary judgment order is not so flawed as to be invalid, there is no evidence that he engaged in grossly negligent conduct or committed a willful act in his capacity as the trustee under the Trust Agreement. Other than the deemed admissions—which we discuss below—Appellant asserts that the only evidence in support of Appellee's motion for summary judgment is the affidavit of John Volke, which is, according to Appellant, too conclusory to constitute competent summary judgment evidence. We will address each contention in turn.

First, if a trial court's order granting summary judgment contains factual findings, this necessarily indicates that a question of fact was present; therefore, the grant of summary judgment would be improper. *See Linwood v. NCNB Texas*, 885 S.W.2d 102, 103 (Tex. 1994); *Odessa Tex. Sheriff's Posse, Inc. v. Ector Cty.*, 215 S.W.3d 458, 463–64 (Tex. App.—Eastland 2006, pet. denied) (findings of fact have no place in a summary judgment proceeding) (citing *IKB Indus. (Nigeria) Ltd. v. Pro-Line Corp.*, 938 S.W.2d 440, 441 (Tex. 1997)). However, when a trial court's summary judgment *order* recites factual findings, we should disregard the factual findings and review the trial court's grant of summary judgment independently to determine if the trial court's ruling was proper. *See Schmitz v. Denton Cty. Cowboy*

7

*Church*, 550 S.W.3d 342, 352–53 (Tex. App.—Fort Worth 2018, pet. denied); *Williams v. Moores*, 5 S.W.3d 334, 336 (Tex. App.—Texarkana 1999, pet. denied) (citing *IKB Indus.*, 938 S.W.2d at 441). As such, in reviewing the trial court's grant of summary judgment, we will not consider the factual findings recited in its order. *See IKB Indus.*, 938 S.W.2d at 441, 443; *Schmitz*, 550 S.W.3d at 352–53.

Appellant's remaining two contentions are closely intertwined with Appellant's second sub-issue; therefore, we will address them together.

B. *Summary Judgment Evidence Regarding the Social Security Checks*

In his second sub-issue, Appellant contends that the record is devoid of evidence that he failed to deposit Social Security checks into the Trust, as Appellee claims. Beyond the deemed admissions, which we will address below, the only summary judgment evidence before us regarding Appellant's personal benefit from and subsequent inaction in the administration of the Trust, namely, the failure to deposit the Social Security benefit checks into the Trust, consists of the affidavit of John Volke, which Appellant argues is profoundly conclusory.

An objection that a summary judgment affidavit is conclusory constitutes an objection to the substance of the affidavit and may be raised for the first time on appeal. *Thompson v. Curtis*, 127 S.W.3d 446, 450 (Tex. App.—Dallas 2004, no pet.) (citing *City of Wilmer v. Laidlaw Waste Sys. (Dall.), Inc.*, 890 S.W.2d 459, 467 (Tex. App.—Dallas 1994), *aff'd*, 904 S.W.2d 656, 660–61 (Tex. 1995)). "A conclusory statement is one that does not provide the underlying facts to support the conclusion." *Bastida v. Aznaran*, 444 S.W.3d 98, 105 (Tex. App.—Dallas 2014, no pet.) (citing *Eberstein v. Hunter*, 260 S.W.3d 626, 630 (Tex. App.—Dallas 2008, no pet.)); *see Brown v. Brown*, 145 S.W.3d 745, 751 (Tex. App.—Dallas 2004, pet. denied). Conclusory statements in affidavits are not competent evidence to support

the grant of summary judgment because they are neither credible nor susceptible to being readily controverted. *Bastida*, 444 S.W.3d at 105; *see Ryland Grp., Inc. v. Hood*, 924 S.W.2d 120, 122 (Tex. 1996).

In his affidavit, Volke stated that he created the Trust "primarily to administer [the Social Security] benefits" and, after the Trust's formation, he "forwarded every single survivor benefits check to [Appellant] to deposit in the Trust account on [Appellee's] behalf." Volke further stated that "[t]here is no doubt" that Appellant: (1) "received all these survivor benefits checks commencing in June 1998 until 2011," (2) "had actual, subjective awareness that the survivor benefits checks needed to be deposited in the Trust for [Appellee's] benefit," and (3) "knew objectively that failure to deposit those survivor benefits checks into the Trust would pose an extreme degree of risk of financial harm to [Appellee]." We conclude that Volke's, and necessarily Appellee's, three assertions are conclusory.

Concerning the first conclusory assertion, when there is positive testimony that a letter has been enclosed in an envelope, correctly stamped and addressed, and deposited in the mail, a rebuttable presumption arises that the addressee received it. *Southland Life Ins. Co. v. Greenwade*, 159 S.W.2d 854, 857 (Tex. 1942); *see Tex. Emps. Ins. Ass'n v. Wermske*, 349 S.W.2d 90, 92 (Tex. 1961). However, this presumption does not arise here. Although Volke stated that he "forwarded" each check to Appellant, presumably by mailing them, he avers nothing regarding the address to which the checks were sent, nor the method of postage. A generalized "forwarding" assertion is, without more, insufficient to raise the presumption of receipt. *See McMillin v. State Farm Lloyds*, 180 S.W.3d 183, 206 (Tex. App.—Austin 2005, pet. denied) ("There is no evidence that the letter had the proper address or postage; therefore, State Farm is not entitled to any presumption that the

McMillins received the check."); *cf. Khalilnia v. Fed. Home Loan Mortg. Corp.*, No. 01-12-00573-CV, 2013 WL 1183311, at *3 (Tex. App.—Houston [1st Dist.] Mar. 21, 2013, pet. denied) (mem. op.) (presumption raised when the affiant incorporated and attached to her affidavit a copy of the first-class mailer used to mail the notice, which was properly addressed and stamped with prepaid postage, and the first-class mailer was unreturned) (citing *Greenwade*, 159 S.W.2d at 857).

Moreover, no supporting evidence is attached to Volke's affidavit. Beyond Volke's affidavit, the only other evidence in the record concerning these checks are the Social Security Administration records that are attached to Appellee's motion for summary judgment, which merely show that the checks were issued by the Administration and were later mailed to Appellee's address. Thus, lacking the presumption of receipt, and any other facts in the record to support the conclusion that "there is no doubt" Appellant received the checks that were "forwarded" to him by Volke, this assertion is conclusory and cannot constitute competent evidence to support the grant of summary judgment. *See Ryland*, 924 S.W.2d at 122; *Bastida*, 444 S.W.3d at 105.

As to the second and third assertions recited in Volke's affidavit, in the absence of any facts in his affidavit to support the conclusion that Appellant received the checks as claimed, there can be no support for the conclusions that Appellant had any awareness, whether subjective or objective, of his responsibility to deposit such checks in the Trust account. *See McMillin*, 180 S.W.3d at 206–07 (holding that piling an inference upon an inference cannot establish receipt of a check lacking the presumption of receipt or other evidence of receipt) (quoting *Schlumberger Well Surveying Corp. v. Norton Oil & Gas Corp.*, 435 S.W.2d 854, 858 (Tex. 1968)); *Wermske*, 349 S.W.2d at 92–93. Further, nowhere in Volke's affidavit does he state

that he informed Appellant that the administration of the Social Security benefits was the primary purpose of the Trust, nor does Appellee's other summary judgment evidence, including the trust agreement, so state. Therefore, the three assertions raised by Volke in his affidavit, and relied upon by Appellee, are conclusory and cannot serve as competent summary judgment evidence in this instance.

Because Volke's affidavit fails to provide an independent basis for the essential elements of Appellee's claim and the grant of summary judgment in her favor, to prevail, her claim must rely on the deemed admissions.

## IV. *Governing Law – Deemed Admissions*

After an action is filed, a party may serve written requests for admissions that can encompass any matter within the permissible scope of discovery. TEX. R. CIV. P. 198.1. If the party upon whom the admissions are served does not serve its responses to the admissions requests within thirty days, the matters in the requests are deemed admitted against that party without the necessity of a court order. TEX. R. CIV. P. 198.2(c). Any matter admitted or deemed admitted is conclusively established unless the trial court, on motion, permits the withdrawal or amendment of the admission. TEX. R. CIV. P. 198.3; *Marshall v. Vise*, 767 S.W.2d 699, 700 (Tex. 1989). Further, deemed admissions can constitute competent summary judgment evidence. *In re Estate of Herring*, 970 S.W.2d 583, 587 (Tex. App.—Corpus Christi-Edinburg 1998, no pet.).

"Requests for admissions are intended to simplify trials. They are useful when 'addressing uncontroverted matters or evidentiary ones like the authenticity or admissibility of documents.'" *Marino v. King*, 355 S.W.3d 629, 632 (Tex. 2011) (quoting *Wheeler v. Green*, 157 S.W.3d 439, 443 (Tex. 2005)). Requests for admissions should be used as "a tool, not a trapdoor." *Id.* (quoting *U.S. Fid. & Guar.*

11

*Co. v. Goudeau*, 272 S.W.3d 603, 610 (Tex. 2008)). "When requests for admissions are used as intended—addressing uncontroverted matters or evidentiary ones like the authenticity or admissibility of documents—deeming admissions by default is unlikely to compromise presentation of the merits." *Medina v. Zuniga*, 593 S.W.3d 238, 245 (Tex. 2019) (quoting *Wheeler*, 157 S.W.3d at 443).

Requests for admissions may not be utilized by a party to require an adverse party to admit the invalidity of its claims or to concede its defenses—such admissions have a "merits-preclusive" effect. *Medina*, 593 S.W.3d at 244–45; *Marino*, 355 S.W.3d at 632. As such, requests for admissions that compromise or preclude an adverse party's right to present the merits of a case—"merits-preclusive" admissions—are not a proper use of this discovery tool and implicate due process. *Marino*, 355 S.W.3d at 633–34 (citing *Wheeler*, 157 S.W.3d at 443–44). "Merits-preclusive" requests for admissions "demand upon a [party] to admit that he ha[s] no cause of action or ground of defense." *Wheeler*, 157 S.W.3d at 443 (quoting *Sanders v. Harder*, 227 S.W.2d 206, 208 (Tex. 1950)); *see TransAmerican Nat. Gas Corp. v. Powell*, 811 S.W.2d 913, 917–18 (Tex. 1991). Thus, due process bars the use of "merits-preclusive" deemed admissions "absent [a showing of] flagrant bad faith or callous disregard for the rules." *Marino*, 355 S.W.3d at 634; *Wheeler*, 157 S.W.3d at 443.

A trial court may allow the withdrawal of a deemed admission upon a showing of (1) good cause and (2) no undue prejudice. TEX. R. CIV. P. 198.3; *see Marino*, 355 S.W.3d at 633. Ordinarily, the burden of showing good cause rests with the party seeking the withdrawal of the deemed admission. *See Ralls v. Funk*, 592 S.W.3d 178, 183 (Tex. App.—Tyler 2019, pet. denied) (citing *Boulet v. State*, 189 S.W.3d 833, 836 (Tex. App.—Houston [1st Dist.] 2006, no pet.)). However, when

12

the deemed admissions are "merits-preclusive," the party opposing the withdrawal of the deemed admissions has the burden to demonstrate that the party seeking the withdrawal acted with flagrant bad faith or callous disregard for the rules. *Id.* at 183 (citing *Marino*, 355 S.W.3d at 634). The absence of flagrant bad faith or callous disregard constitutes good cause for the withdrawal of "merits-preclusive" deemed admissions. *Marino*, 355 S.W.3d at 634. When, as in this case, the deemed admissions are used as the basis for the grant of summary judgment, the flagrant bad faith or callous disregard requirement is incorporated as an element of the movant's summary judgment burden. *Id.* (citing *Wheeler*, 157 S.W.3d at 443–44).

Flagrant bad faith or callous disregard is not simply bad judgment; it is the "conscious doing of a wrong for dishonest, discriminatory or malicious purpose." *Ralls*, 592 S.W.3d at 183 (citing *Ramirez v. Noble Energy, Inc.*, 521 S.W.3d 851, 860 (Tex. App.—Houston [1st Dist.] 2017, no pet.)); *see Time Warner, Inc. v. Gonzalez*, 441 S.W.3d 661, 666 (Tex. App.—San Antonio 2014, pet. denied). A determination of flagrant bad faith or callous disregard may be made when it is shown that a party is mindful of impending deadlines and nonetheless either consciously or flagrantly fails to comply with the applicable rules. *Ralls*, 592 S.W.3d at 183 (citing *Ramirez*, 521 S.W.3d at 860).

## V. *Analysis – Deemed Admissions*

### A. *The Deemed Admissions are Merits-Preclusive*

Appellee served eighty-nine requests for admissions on Appellant. Of those requests, Appellant complains that sixty-four are improper. The complained-of requests generally fall into six categories of inquiry; many are scripted identically, differing only by the dollar amount and year in which the Social Security benefits allegedly should have been deposited into the Trust by Appellant.

First, Appellant complains of Requests Nos. 10 and 11, which read:

10. Admit you owed Jordyn G. Volke a fiduciary duty.

11. Admit you breached your fiduciary duty to Jordyn G. Volke.

Second, Appellant complains of sixty requests for admissions. These requests asked Appellant to admit that, from 1997 to 2011, (1) he received the Social Security benefit checks in dispute, (2) he failed to deposit each check into the Trust account, and (3) the Trust and Appellee were damaged because of his failures. The requests are identical, except as to the year and the amount of benefit funds issued, and each read as follows:

Admit the Trust should have received [Dollar Amount] in Social Security benefits in [Year].

Admit you did not deposit in the Trust bank account the [Dollar Amount] in Social Security benefits that you, in your capacity as Trustee, should have deposited in [Year].

Admit the Trust has been damaged [Dollar Amount] in Social Security benefits that you, in your capacity as Trustee, should have deposited in [Year].

Admit Jordan G. Volke [Appellee] has been damaged [Dollar Amount] in Social Security benefits that you, in your capacity as Trustee, should have deposited in [Year].

Finally, Appellant complains of Requests Nos. 88 and 89, which read:

88. Admit the Trust Agreement does not allow you to spend Trust funds for the care of Jordyn G. Volke's [Appellee's] biological daughter [Z.G.]

89. Admit that using Trust funds for care of Jordyn G. Volke's [Appellee's] biological daughter [Z.G.] is a breach of the terms of the Trust agreement.

14

All of the requests for admissions that Appellee served on Appellant, except for request for admission No. 10[2] and those requesting that Appellant admit that he did not deposit the checks, are "merits-preclusive" requests for admissions. Clearly, the purpose of these requests for admissions was not to resolve uncontroverted matters, to discover information, or to authenticate documents. *See Medina*, 593 S.W.3d at 244–45; *Wheeler*, 157 S.W.3d at 443. Rather, the intent of these requests was to establish the elements of Appellee's claim for breach of fiduciary duty. *See ETC Tex. Pipeline, Ltd.*, 582 S.W.3d at 840 (citing *First United*, 514 S.W.3d at 220) (discussing the elements of a claim for breach of fiduciary duty).

Appellee contends that, as discrete inquiries which Appellant was free to deny, her requests are not merit conclusive. For example, Appellee points out that requests for admissions Nos. 10 and 11 concern, respectively, the first two elements of a breach of fiduciary duty claim and, therefore, do not preclude Appellant's ability to deny her claims or present his defenses. We disagree. "We need not painstakingly examine each of the requests for admissions . . . to understand the gist of [Appellee's] argument." *Medina*, 593 S.W.3d at 246. Collectively, the "battery of requests" Appellee served on Appellant asked him to admit his liability and to "admit away" his case. *Id.*; *see Marino*, 355 S.W.3d at 632. Appellee's discovery strategy is not a proper use of requests for admissions, and it, to Appellee's detriment, implicates due process. *See Medina*, 593 S.W.3d at 245; *Marino*, 355 S.W.3d at 632–33.

---

[2]Request for admission No. 10 is not at issue because, in a trustee relationship, a fiduciary duty arises as a matter of law. *Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213, 220 (Tex. 2019) (citing *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 674 (Tex. 1998)). It is clear from the record that Appellant was the trustee—and Appellee was the beneficiary—of the Trust during the relevant time period.

B. *Appellee Failed to Carry Her Summary Judgment Burden*

Appellee does not deny that she attempted to use the deemed admissions to preclude the presentation of Appellant's case on the merits. Indeed, Appellee argued in response to Appellant's motion for new trial that the trial court correctly granted summary judgment based on the deemed admissions. Because she based her summary judgment on "merits-preclusive" deemed admissions, the burden to establish Appellant's flagrant bad faith or callous disregard for the applicable rules shifted to Appellee and was an incorporated element of her summary judgment burden. *Marino*, 355 S.W.3d at 633.

In *Wheeler* and *Marino*, the Texas Supreme Court addressed scenarios that are similar to the matter before us in this case. In *Wheeler*, the trial court deemed admitted sixty-four requests after the pro se litigant failed to timely respond. *Wheeler*, 157 S.W.3d at 441. The pro se litigant never filed a motion to withdraw the deemed admissions or a response to the motion for summary judgment, which the trial court later granted based solely on the deemed admissions. *Id.* The court of appeals affirmed the trial court's judgment; however, the Texas Supreme Court reversed, noting that the record was devoid of any showing that the pro se litigant's conduct constituted flagrant bad faith or a callous disregard for the applicable rules, which was, and is, a necessary requirement to justify the grant of summary judgment when the request for relief is based solely on a movant's reliance of deemed admissions. *Id.* at 443–44. In reversing the court of appeals, the *Wheeler* court noted that pro se litigants are not exempt from the rules of procedure, "[b]ut when a rule itself turns on an actor's state of mind (as these do here), application may require a different result when the actor is not a lawyer." *Id.* at 444.

Six years later, in *Marino*, the Texas Supreme Court again reversed a grant of summary judgment based on "merits-preclusive" deemed admissions because the movant failed to establish the nonmovant's flagrant bad faith or callous disregard for the applicable rules. *Marino*, 355 S.W.3d at 634. In *Marino*, a pro se litigant responded to requests for admissions one day late and, in responding, denied liability. *Id.* at 630. Her late responses were subsequently deemed admitted, and the opposing party moved for summary judgment based solely on the deemed admissions. *Id.* The court of appeals affirmed the trial court's grant of summary judgment, concluding that the pro se litigant waived any complaint about the deemed admissions "by failing to raise the issue in any manner, either before or after judgment, to the trial court." *Id.* at 632. Nevertheless, the Texas Supreme Court reversed, holding that "[u]sing deemed admissions as the basis for summary judgment . . . does not avoid the requirement of flagrant bad faith or callous disregard, the showing necessary to support a merits-preclusive sanction; it merely incorporates the requirement as an element of the movant's summary judgment burden." *Id.* at 634. The *Marino* court concluded that there was no evidence of the pro se litigant's flagrant bad faith or callous disregard for the applicable rules; therefore, the trial court erred in granting summary judgment based on the deemed admissions. *Id.*

Here, as we have explained, Appellant's deemed admissions had an intended "merits-preclusive" effect on his ability to defend the claims that Appellee had asserted against him in this case. Moreover, Appellee relied on the deemed admissions as a basis for requesting summary judgment. Accordingly, in order to carry her burden to establish that she was entitled to judgment as a matter of law,

17

Appellee was required to prove that Appellant acted with flagrant bad faith or callous disregard for the applicable rules. *See id.* at 634; *Wheeler*, 157 S.W.3d at 443–44.

In light of the record before us, we cannot say that Appellee met her burden. Appellee's motion for summary judgment did not include or attach any evidence regarding Appellant's alleged flagrant bad faith or callous disregard for the applicable rules. In fact, Appellee's motion was silent on both points. Interestingly, Appellee discussed her requisite burden for the first time in her response to Appellant's motion for new trial. Meanwhile, Appellant's letter response to Appellee's motion for summary judgment disputed the essential elements of Appellee's claim against him and included an explanation for his inability to participate in the underlying litigation during a twenty-month period of time: he had been gravely ill, hospitalized, and endured multiple organ transplants.

Appellant's lack of participation was further exacerbated by the withdrawal of his trial counsel in December of 2017. This marked the beginning of his twenty-month silence. Acting pro se and ostensibly beset by severe health problems, Appellant failed to participate in the discovery process. Appellee's solution to this prolonged silence was to wait eleven months before filing her second set of requests for admissions, which contained the voluminous "merits-preclusive" requests at issue here.[3] As Appellee no doubt expected, Appellant did not respond to these requests, and they were deemed admitted. Two months later, Appellee filed her motion for summary judgment, substantially relying on the deemed admissions.[4]

---

[3]Indeed, Appellee's lack of diligence in pursuing her claims against Appellant cannot be ignored. After filing her motion for summary judgment, it became necessary for Appellee to file a motion to retain this case on the trial court's docket because it was set for dismissal for want of prosecution.

[4]Although Appellee attached other evidence to her motion, the deemed admissions she relied on were indispensable evidence to the multiple elements of her breach of fiduciary duty claim.

Appellant filed a timely letter response, nine days before the summary judgment hearing.

On appeal, however, Appellee presents three points to show that Appellant acted in flagrant bad faith or callous disregard for the applicable rules: (1) Appellant's letter response to the motion for summary judgment, which directly addressed the substance of the challenged requests for admissions, shows that Appellant knew about the response deadlines and the potential consequences of failing to respond to the requests for admissions, and yet consciously chose not to respond; (2) Appellant did not participate in the underlying litigation for a twenty-month period; and (3) the record purportedly shows Appellant spent trust money for personal use, in violation of the Trust Agreement, which is indicative of Appellant's dishonesty, malicious purpose, and conscious disregard for the rules.

Importantly, Appellee neglected to present any of these points in her motion for summary judgment, or to offer any evidence to support the claim she now asserts—that Appellant acted with flagrant bad faith or callous disregard for the applicable rules. In fact, she wholly failed, until now, to reference or mention this crucial and necessary aspect of her burden. Nevertheless, even if these arguments had been presented to the trial court, they are insufficient to prove that Appellant acted with flagrant bad faith or callous disregard for the applicable rules. *See Amedisys*, 437 S.W.3d at 511–512; *Ramirez*, 521 S.W.3d at 861–62. This deficiency is fatal to Appellee's position.

Irrespective of what we have discussed above, Appellee urges that we consider Appellant's letter response to Appellee's motion for summary judgment for the proposition that it shows Appellant's awareness of the status of the proceedings in the underlying litigation and his callous disregard for the obligations imposed

upon him by the rules of civil procedure. Nonetheless, Appellant's letter response also provides a compelling explanation for his absence and minimal participation in the underlying suit. Appellee asserts that we should not consider Appellant's letter response for its contents; rather, we should simply consider that its filing is evidence of Appellant's knowledge of the consequences of failing to respond, and his presumed ability to respond. We may never know, and the record before us does not show, Appellant's "state of mind" when he drafted his letter response. Such a "state of mind" determination cannot be ascertained simply by reviewing this document. Similarly, any effort by this court to discern what Appellant's "state of mind" might have been at the time he drafted his letter response would require that we engage in a speculative exercise, a function that is clearly prohibited. Nevertheless, if we were to consider Appellant's letter response for the reasons advanced by Appellee, the result would weigh against Appellee's contention. A plain reading of Appellant's letter response shows a pro se litigant's desperate effort to argue his case and to controvert the very issues that are addressed in the deemed admissions.

Further, we are not persuaded that the remaining points urged by Appellee establish that she satisfied her burden to show that Appellant acted in flagrant bad faith or callous disregard for the applicable rules. Appellant acted pro se for the duration of the twenty-month period to which Appellee refers. Appellee sent the second set of requests for admissions to Appellant, which included all of the "merits-preclusive" requests now at issue, four months prior to the trial court's grant of summary judgment. Appellee relies on *Carter v. Perry* for the proposition that this four-month period in which Appellant failed to respond to the second set of requests for admissions is sufficient to establish Appellant's flagrant bad faith or callous disregard for the applicable rules. *See Carter v. Perry*, No. 02-14-00185-CV, 2015

WL 4297586, at *4 (Tex. App.—Fort Worth July 9, 2015, no pet.) (mem. op.) (citing *Soto v. Gen. Foam & Plastics Corp.*, 458 S.W.3d 78, 84–85 (Tex. App.—El Paso 2014, no pet.)). The scenario before us is distinguishable and differs significantly from *Carter* and *Soto*, on which *Carter* relies.

In *Carter*, the appellant was represented by counsel, and he argued that good cause existed for his failure to timely respond to the requests for admissions because the requests for admissions in question were mailed to an incorrect address and because he did not file an answer in the case until after the requests had been served. *Id.* The Fort Worth Court of Appeals rejected his contention because the same address for the appellant had been used for other notices, which the appellant did not dispute he had received, and because his answer had in fact been filed four months prior to the date the requests were served. *Id.* Likewise, in *Soto*, the appellant, who refused to respond to the requests during the time period permitted by the rules, was represented by counsel for nearly that entire period of time. Furthermore, his counsel unsuccessfully attempted to persuade the appellant to respond to the requests. *Soto*, 458 S.W.3d at 84. Here, the circumstances are more akin to what the Texas Supreme Court considered and addressed in *Wheeler* and *Marino*. Not only was Appellant acting pro se throughout the relevant time period, the origin of all the communication dilemmas and issues that developed between the parties, and between Appellant and his former trial counsel, was Appellant's numerous and severe health maladies and attendant complications.

Moreover, although the appellants' responses to the requests for admissions in *Marino* and *Wheeler* were only one or two days late, the degree to which the responses were overdue is only one factor to consider in determining whether the requisite state of mind is sufficient to deny a request to withdraw deemed

admissions. *See Wheeler*, 157 S.W.3d at 444 ("[P]ro se litigants are not exempt from the rules of procedure . . . . But when a rule itself turns on an actor's state of mind (as these do here), application may require a different result when the actor is not a lawyer."); *see also In re TT-Fountains of Tomball, Ltd.*, No. 01-15-00817-CV, 2016 WL 3965117, at *11 (Tex. App.—Houston [1st Dist.] July 21, 2016, orig. proceeding) (mem. op.) (granting mandamus relief and holding relator was entitled to have deemed admissions stricken, even though the relator did not respond to the request for admissions for more than a year after they were due); *In re Reagan*, No. 09-07-00113-CV, 2007 WL 1087148, at *1 (Tex. App.—Beaumont Apr. 12, 2007, orig. proceeding) (mem. op.) (same).

Finally, Appellee contends that the record shows that Appellant made impermissible distributions to himself in violation of the Trust Agreement. The only support in the record that such distributions were allegedly made in violation of the Trust Agreement are contained in deemed admissions Nos. 88 and 89.[5] Standing alone, these admissions cannot be indicative of conduct that might arguably constitute flagrant bad faith or callous disregard such that it would alleviate the due process concerns ordinarily attendant to the use of these otherwise barred "merits-preclusive" requests for admissions.

We hold that Appellee failed to establish that Appellant acted in flagrant bad faith or callous disregard for the applicable rules when he failed to respond to Appellee's "merits-preclusive" requests for admissions. *See Marino*, 355 S.W.3d at 634. In this context, flagrant bad faith or callous disregard is a necessary element of Appellee's summary judgment burden. *Id.*; *Ramirez*, 521 S.W.3d at 861–62.

---

[5]We express no opinion as to the meaning of the terms of the Trust Agreement itself.

Because we have held that Appellee did not prove this element, as a consequence, she failed to carry her summary judgment burden. *See Marino*, 355 S.W.3d at 634. Therefore, the trial court erred when it granted summary judgment in Appellee's favor. *See Amedisys*, 437 S.W.3d at 511–12. Accordingly, we sustain Appellant's first issue on appeal.[6]

## VI. *This Court's Ruling*

We reverse the judgment of the trial court and remand this cause to the trial court for further proceedings consistent with this opinion.


W. STACY TROTTER

JUSTICE


September 23, 2021

Panel consists of: Bailey, C.J.,
Trotter, J., and Wright, S.C.J.[7]

Williams, J., not participating.

---

[6]Because our resolution of this point of error is dispositive of this appeal, we need not address the remaining issues raised by Appellant. TEX. R. APP. P. 47.1.

[7]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.